**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHARLES RAMSEY, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) Case No. 04-CV-446-TCK-SAJ |
| MIKE ADDISON, Warden, | ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1). Petitioner challenges his conviction entered in Tulsa County District Court, Case No. CF-2000-1731. Respondent filed a response to the petition (Dkt. # 6), and has provided the state court records necessary for adjudication of Petitioner's claims (Dkt. # 7). Petitioner filed a reply (Dkt. # 10). For the reasons discussed below, the Court finds the petition shall be denied.

### *BACKGROUND*

Having suffered serious injuries in a 1998 Florida motorcycle accident, 37-year-old Charles Ramsey returned to Tulsa to live with his mother, Sandra Ramsey. On March 1, 2000, Ms. Ramsey disappeared. Her body was found on March 25, 2000, about a mile from her home, floating in Lake Yahola. A concrete block was attached to her body with a black bungee cord. An autopsy revealed Ms. Ramsey had been strangled.

On March 31, 2000, Petitioner was charged by information with Murder in the First Degree (malice aforethought) of his mother, Sandra Ramsey, in Tulsa County District Court, Case No. CF-2000-1731. Petitioner's first trial before a jury resulted in a mistrial after the jury announced it was deadlocked. Petitioner was tried a second time. Once again, a mistrial was declared after the jury

was deadlocked. At Petitioner's third trial, he was convicted by a jury of the lesser offense of Second Degree Murder and sentenced to life imprisonment. See Dkt. # 1. He was represented at trial by attorney Gregg Graves.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). Represented by attorney Stuart Southerland, Petitioner raised eight (8) propositions of error on direct appeal:

| | |
|---|---|
| Proposition I: | The jury should not have been instructed on the offense of Second Degree Murder over Appellant's objection. |
| Proposition II: | The evidence was insufficient to support a conviction for Second Degree Murder. |
| Proposition III: | Improper use of evidence of other crimes requires the reversal of Appellant's conviction for Second Degree Murder. |
| Proposition IV: | The admission of photographs of the deceased was in error. |
| Proposition V: | Trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition VI: | Evidence suggesting that Appellant was in possession of child pornography constituted an evidentiary harpoon, depriving him of a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition VII: | Prosecutorial misconduct deprived Appellant of a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition VIII: | The accumulation of error in Appellant's trial requires reversal or modification. |

See Dkt. # 6, Ex. A. In an unpublished summary opinion, filed February 18, 2003, in Case No. F-2001-978, the OCCA rejected each of Petitioner's claims and affirmed the Judgment and Sentence of the trial court (Dkt. # 6, Ex. D). Nothing in the record suggests that Petitioner sought a *writ of*

*certiorari* from the United States Supreme Court. He did not seek post-conviction relief in the state courts.

Petitioner now seeks federal habeas corpus relief. In his petition filed on June 1, 2004, Petitioner raises the same eight (8) grounds of error as those urged on direct appeal:

Ground 1: The jury instruction given over defense objections violated Constitutional Due Process by failing to (1) to support an instruction on lesser included offenses, (2) failing to give adequate notice; & (3) abrogating the Defendant's right to proceed "all or nothing."

Ground 2: Due Process was violated because the evidence was insufficient to support a conviction for Second Degree Murder.

Ground 3: Improper use of evidence of other crimes requires the reversal of Petitioner's conviction for Second Degree Murder violating Due Process.

Ground 4: The admission of photographs of the deceased was in error and violated Due Process and requires reversal of the Petitioner's conviction.

Ground 5: Trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Ground 6: Evidence suggesting that Petitioner was in possession of child pornography constituted an evidentiary harpoon, depriving Petitioner of a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Ground 7: Prosecutorial misconduct deprived the Petitioner of a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Ground 8: The accumulation of error in Petitioner's trial requires reversal or modification.

See Dkt. # 1. In support of his claims, Petitioner refers the Court to all facts and authorities set forth in the brief in support of his direct appeal. Id. In response to the petition, Respondent asserts that grounds one, three, four and six are not cognizable as they involve issues of state law, and Petitioner is not entitled to habeas relief on the remaining grounds pursuant to 28 U.S.C. § 2254(d). See Dkt.

# 6. Petitioner replies that all his claims are cognizable on habeas review because he is challenging the fundamental fairness of his trial under the Due Process Clause. See Dkt. # 10.

*ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case.  In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 150-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the

"determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, Petitioner presented all eight grounds on direct appeal where they were adjudicated by the OCCA. Therefore, insofar as Petitioner's claims are cognizable on habeas corpus review, the § 2254(d) standard applies to this Court's analysis of Petitioner's claims presented in grounds one through eight.

### *1. Second degree murder instruction (ground 1)*

In his first ground for relief, Petitioner maintains that the trial court erred in giving a lesser included offense instruction on second degree murder despite his objection to the giving of the instruction. Petitioner asserts that he was not given notice adequate to allow him to defend against a lesser included offense. Petitioner also argues that he had a right to waive the giving of the lesser included offense instruction and proceed with his "all or nothing" defense to the first degree murder charge. Finally, he claims the evidence did not support a lesser included offense instruction.

*Notice*

Petitioner first argues that he did not have sufficient notice to satisfy the constitutional requisite of adequate notice of the lesser included offense. See Schmuck v. United States, 489 U.S. 705, 717-18 (1989) ("It is ancient doctrine of both the common law and our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him."). The OCCA rejected this claim on direct appeal, finding that "Appellant had actual notice, well in advance of trial, that the State considered Depraved-Mind Murder to be an alternative theory of culpability, and that it would likely request jury instructions on that theory." See Dkt. # 6, Ex. D at

2. Expanding on its conclusion that Petitioner had actual notice, the OCCA reasoned in a footnote that:

> Appellant was convicted of second-degree depraved-mind murder after juries in two previous trials could not reach a unanimous verdict on his culpability for first-degree malice murder. In the first two trials, the State requested instructions on both depraved-mind murder and heat-of-passion manslaughter, but the trial court refused to give them. In his third trial, the court reversed its position and instructed the jury on both alternatives. In this context, "notice" means awareness, before trial begins, of what charges one must be prepared to defend against, not assurances of exactly what offenses or theories the trial court will instruct on at the close of the case. While Appellant may have felt or hoped the trial court would again reject the related-offense instructions, he had no guarantee of that result. Throughout the case, Appellant maintained that he had absolutely no involvement in the victim's death. He does not demonstrate how this defense was compromised or taken advantage of by instructions on depraved-mind murder.

Id. The Court agrees with the OCCA that this claim has no merit. Pursuant to Oklahoma statute, Petitioner was on notice of the possibility of a lesser included offense conviction because Oklahoma law provides that a "jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged . . . ." Okla. Stat. tit. 22,§ 916. The OCCA has interpreted the state statute as providing that "[a] defendant is deemed to know that he may be convicted of the greater crime with which he is charged and any lesser included offense . . . ." Shrum v. State, 991 P.2d 1032, 1034-35 (Okla. Crim. App. 1999). Particularly, with regard to homicide cases, trial courts in Oklahoma are obligated to instruct on "all lesser included offenses supported by the evidence." Id. at 1034; Gilson v. State, 8 P.3d 883, 917 (Okla. Crim. App. 2000) (summarizing Shrum). Additionally, as noted by the OCCA, the record reflects that the state had requested instructions on second degree murder and heat-of-passion manslaughter in both of Petitioner's previous trials. Finally, it is significant that in this case defense counsel admitted that he was not surprised the state asked for a lesser included instruction and was on notice of the

possibility of a second degree murder instruction being requested at the third trial. See Tr. Trans. Vol. IV at 144. The OCCA's decision that Petitioner was given adequate notice that a lesser included instruction on second degree murder might be given was neither an unreasonable application of Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence. Petitioner is not entitled to habeas relief on this claim.

*Right to Waive Lesser Included Offense*

Petitioner next contends that he had a right to waive the lesser included offense instructions and proceed with his "all or nothing" defense to first degree murder. This claim also fails. No Supreme Court decision has recognized a right of a defendant to waive the giving of a lesser included offense instruction to the jury where there is evidence to support the giving of such an instruction. It is a prerequisite for habeas relief "that the asserted constitutional right on which [the petitioner's claim] rests derive in clear fashion from Supreme Court precedent." Carter v. Ward, 347 F.3d 860, 863 (10th Cir. 2003). The Supreme Court's decisions in this area have focused on the importance of jury instructions on a lesser included offense where "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). Although Petitioner's theory is that the jury would have had to acquit him of the first degree murder offense, the absence of a lesser included offense instruction would also have created the risk that a rational jury would have found Petitioner guilty of the greater offense, in view of the evidence of Petitioner's culpability in the victim's murder presented at his trial. The Supreme Court recognized this vulnerability in a jury verdict in Keeble:

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and

7

> if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction - in this context or any other - precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.

Id. at 212. Petitioner has failed to demonstrate that the OCCA's rejection of this issue on direct appeal was an unreasonable application of clearly established Supreme Court law. He is not entitled to habeas corpus relief on this issue.

*Insufficient evidence to support instruction*

Petitioner claims that the evidence did not support an instruction on lesser-included offenses because there was no direct evidence that he killed his mother, and his defense was that he had no part in her death. See Dkt. # 6, Ex. A at 10. The OCCA found that, "The nature of the victim's injuries and all the surrounding circumstances do not negate the inference that the perpetrator had an intent to do serious bodily injury, and thus acted with a depraved mind, rather than a specific intent to kill." See Dkt. # 6, Ex. D at 3. The state appellate court further concluded that the "evidence reasonably supported either theory." Id. As noted above, in Oklahoma, "all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are supported by the evidence." Gilson, 8 P.3d at 917. The Tenth Circuit has confirmed the Oklahoma rule:

> "[T]he proper test of sufficient evidence for instructions on a lesser included offense is whether prima facie evidence of the lesser offense has been presented." Ball v. State, 173 P.3d 81, ¶ 32 (Okla. Crim. App. 2007). Under the "evidence test," the court considers "whether the evidence might allow the jury to acquit the defendant of the greater offense and convict him of the lesser." Jackson v. State, 146 P.3d 1149, 1159 (Okla. Crim. App. 2006); Frederick v. State, 37 P.3d 908, 945 (Okla. Crim. App. 2001) (quoting Beck, 447 U.S. at 635, 100 S.Ct. 2382 ("In the federal courts,

> it has long been beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.")) (internal quotation marks omitted).

Brown v. Sirmons, 515 F.3d 1072, 1088 (10th Cir. 2008). Petitioner has failed to demonstrate how the OCCA's conclusion affirming the trial court's decision to give lesser included offense instructions was contrary to or involved an unreasonable application of Supreme Court law, or that it was an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Habeas relief shall be denied on this claim.

### *2.     Insufficient evidence to support conviction (ground 2)*

At the close of the evidence, the prosecution requested second degree murder and first degree manslaughter instructions in addition to a first degree murder instruction. See Tr. Trans. Vol. IV at 140. Ultimately, the jury found Petitioner guilty of the lesser offense of second degree murder. In Petitioner's direct appeal, the OCCA found, based entirely on state law, that the evidence supported the second degree murder conviction. See Dkt. # 6, Ex. D at 3. Petitioner challenges that finding by arguing that the evidence was insufficient to support his conviction. Specifically he claims there was no direct evidence that he was involved at all in the murder of his mother, and all evidence was circumstantial.

As stated above, a writ of habeas corpus will not be issued unless the state court's legal conclusions are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the state court's factual conclusions are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit

9

authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004); Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003). Under either standard, Petitioner's claim in this case fails.

In a habeas proceeding, this Court must review the sufficiency of the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Significant to Petitioner's case, both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). However, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). This standard of review respects the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony presented at trial. Jackson, 443 U.S. at 319. Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Applying this standard, this Court concludes that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of second degree murder. In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16.  In Oklahoma, homicide is murder in the second degree

10

when "perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual." See Okla. Stat. tit. 21, §701.8(1). The jury heard evidence that arguments between Petitioner and his mother had escalated in the days preceding her disappearance. Petitioner's neighbor, Loretta McCloud, testified that Petitioner was angry with his mother, was "tired of being treated like a child," and stated in an angry voice that, "Something bad's gonna . . . ." See Tr. Trans. Vol. III at 89-90. She also testified that she had seen bruises on the victim shortly before her disappearance that she believed were caused by Petitioner. Id. at 92. Witness Janice Thomas testified that she saw a "big ol' bruise on [the victim's] right leg" a few days before Ms. Ramsey disappeared. Id. at 135. Witness Alice Rutledge, a registered medical assistant who administered weekly allergy injections to Ms. Ramsey, testified that on February 22, 2000, she observed that the victim had a black eye and that Petitioner and his mother were not acting as friendly to each other as in the past. Id. at 152-55. Tulsa police officer Tom Campbell testified that Petitioner admitted to him that his relationship with his mother "was fairly rocky," and that during their interview, Petitioner referred to his mother as "the bitch." Id. at 191-92. Finally, the jury heard testimony that while investigating the disappearance of Ms. Ramsey, Tulsa Police Officer Ronald Jones observed fifty-seven (57) bungee cords distributed around the outside of her home. Id. at 215. Many of the bungee cords were hanging on the fence, and several were attached to the fifty-nine (59) concrete cinder blocks stacked in various places in the yard. Id. at 215-16. Ms. Ramsey's body was discovered floating in Lake Yahola with a bungee cord attached to a concrete cinder block attached to her leg. Id. at 257. Circumstantial evidence could lead a jury to reasonably infer that Petitioner perpetuated an imminently dangerous act which resulted in the death of his mother. Based

on Oklahoma law and the cited testimony, the Court finds that a rational trier of fact could have found proof of guilt beyond a reasonable doubt of second degree murder.

The Court therefore concludes that the OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to or an unreasonable application of federal law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Circuit has not clearly settled whether sufficiency of the evidence on habeas review presents a question of law or fact).

### 3.     *Improper use of evidence of other crimes (ground 3)*

In ground three Petitioner argues that the admission of evidence regarding prior physical injuries inflicted on the victim by Petitioner was improper. He also claims that the trial court failed to instruct the jury on limits to the use of such evidence. The OCCA found that the "witnesses' observations of the victim's injuries in the days preceding her death were properly admitted as circumstantial proof of prior altercations between [Petitioner] and the victim, which bore on the issue of intent." Dkt. # 6, Ex. D at 3. Respondent asserts that this issue is not cognizable in this habeas corpus action because it concerns evidentiary rulings by the state trial court.

Habeas relief is not available in a challenge to state court evidentiary rulings unless the rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002). Petitioner presents no evidence that the admission of the challenged evidence rendered his trial fundamentally unfair. Accordingly, he is not entitled to habeas relief on his ground three claim.

### 4.     *Gruesome photographs (ground 4)*

For his next claim, Petitioner asserts that gruesome photographs of the deceased unfairly

affected the outcome of the trial. Respondent responds that the admission of the photographs did not render Petitioner's trial fundamentally unfair, and that the OCCA's rejection of this issue was proper. Citing state law found in McCormick v. State, 845 P.2d 896, 898 (Okla. Crim. App. 1993), the OCCA concluded that the photographs at issue "were relevant to show the manner in which the victim's body was disposed and, circumstantially, the identity of the killer; they did not mislead the jury and were not gratuitously shocking." See Dkt. # 6, Ex. D at 3.

Federal habeas review is not available to correct state law evidentiary errors, but is limited to violations of constitutional rights. Thornburg v. Mullin, 422 F.3d 1113, 1128-29 (10th Cir. 2005) (citing Smallwood v. Gibson, 191 F.3d 1257, 1275 (10th Cir. 1999)). In Thornburg, the petitioner also contended that the introduction of gruesome photographs deprived him of a fundamentally fair trial and due process of law. Reviewing the Thornburg record under the constraints of the AEDPA, the Tenth Circuit found that the State bore the burden of convincing the jury that its witnesses and experts provided an accurate account of events. Noting that the photographs, although gruesome, corroborated the accounts of the State's witnesses, the Circuit Court determined that the OCCA had not acted contrary to, or unreasonably applied, federal law in concluding that admission of the photographs was proper. Thornburg, 422 F.3d at 1129.  As in Thornburg, the scenes depicted in the photographs challenged by Petitioner corroborate the testimony of other witnesses who described the scene, and manner and cause of death of the victim. The OCCA's decision that the photos were properly admitted into evidence was not contrary to, or an unreasonable application of, federal law.

### 5. *Ineffective assistance of trial counsel (ground 5)*

In his ground five claim, Petitioner contends that his trial counsel was constitutionally ineffective because he called Paul Thomas as a witness. Mr. Thomas had testified for the state in

13

Petitioner's first two trials. Citing Strickland v. Washington, 466 U.S. 668 (1984), the OCCA rejected this issue on direct appeal, finding "we cannot say trial counsel's strategy, and the tactics used to achieve that strategy, which Appellant agreed to on the record, were unreasonable under prevailing professional norms." See Dkt. # 6, Ex. D at 3. Respondent asserts that the OCCA's ruling on this issue was not contrary to or an unreasonable application of Supreme Court law.

Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of this claim was an unreasonable application of Supreme Court precedent. To establish that his counsel was constitutionally ineffective for calling Mr. Thomas to testify, Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. 668 at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). Failure to establish either prong of the Strickland standard will result in denial of relief. Strickland, 466 U.S. at 697.

In this case, trial counsel's decision to use Mr. Thomas as a defense witness was not objectively unreasonable under the first prong of Strickland. As noted by Respondent, the trial judge asked Petitioner's trial counsel about his strategy in calling Mr. Thomas. Counsel replied:

> First, I would advise the Court that the basis of that decision, the previous trial we put that same evidence into issue, with the knowledge of Mr. Ramsey at that time, and he was here to hear that evidence when we put it into issue, we didn't just call Mr. Thomas as witness at that time. We had reason to believe the State would not call Mr. Thomas, and we had to make a decision, and we chose to call Mr. Thomas.
>
> We had discussion with Mr. Ramsey this week before Mr. Thomas was put on the stand, and advised him why we were calling Mr. Thomas, and that the purpose would be to show the inconsistencies of his testimony. If that is different than Mr. Ramsey's recollection, I would invite him to state anything on the record that I believe that he was aware of Mr. Thomas' testimony and why we were calling Mr. Thomas.

See Tr. Trans. Vol. IV at 148-49. The trial judge then asked Petitioner if he had anything to say concerning the issue, and Petitioner replied that he did not. At that point, the judge concluded that a tactical decision had been made to put Mr. Thomas on the stand and that it was done after consultation with Mr. Ramsey. Id. at 149. Petitioner now asserts that his counsel was constitutionally ineffective for having Mr. Thomas testify for the defense. The Court does not agree.

A lawyer's decision to call or not call a witness is a strategic decision generally not subject to review. See Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000). Strategic or tactical decisions are presumed correct. Strickland, 466 U.S. at 690 (holding that strategic choices made after a thorough investigation of law and facts are "virtually unchallengeable"). Counsel's strategic decision in this case to call Mr. Thomas as a witness in order to show the inconsistencies in his testimony was

15

not completely unreasonable. Petitioner has not demonstrated that his trial counsel performed deficiently. The OCCA's adjudication of this claim was neither contrary to, nor an unreasonable application of Supreme Court law. See 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to habeas corpus relief on his ground five claim.

### 6. *Evidentiary harpoon rendered trial unfair (ground 6)*

In ground six, Petitioner asserts that an "evidentiary harpoon" delivered by prosecution witness Tulsa Police Officer Mike Huff violated his due process right to a fair trial. In particular, Petitioner complains that Officer Huff embellished his testimony about pornographic pictures found on Petitioner's computer when he speculated that some of the pictures could possibly have been pictures of underage girls. The testimony about the computer pictures was found relevant because evidence had been presented that Petitioner and his mother argued about Petitioner's viewing of pornographic pictures on the computer. Petitioner claims that Officer Huff's speculation about underage girls was an obvious attempt to suggest to the jury that Petitioner was in possession of child pornography. The relevant portion of Officer Huff's cross examination testimony follows:

> Q: Okay. Now, you talked about finding some pornography and things of that nature. You didn't find anything that was a crime, did you?
>
> A: No, sir.
>
> Q: Okay. So it was legal pictures.
>
> A: Well, yes, sir. I -- I don't know if -- some of it could have possibly been pictures of underage girls. It was young women, but nothing --
>
> Q: Excuse me, Officer. Any suggestion it was pictures of underage girls?
>
> A: Well, there were young girls.
>
> Q: Have you put anything in your reports that has the suggestion it was pictures of underage girls?

> A: No, sir.
>
> Q: And have you ever conveyed in any previous testimony that it was pictures of underage girls?
>
> A: No, sir.
>
> Q: And have you ever suggested to me or to any person in this courtroom prior to today that it was underage girls?
>
> A: Well -- No, I don't know if the question's been asked this way previously, but --

See Tr. Trans. Vol. III at 238-39. At this time, Petitioner's attorney asked that Officer Huff's answer be stricken and he moved for a mistrial. The trial court sustained the objection, denied the request for a mistrial, and admonished the jury. Id. at 239.

The OCCA found no evidentiary harpoon, noting specifically that Officer Huff's comments were invited by defense counsel. Dkt. # 6, Ex. D at 4. The state appellate court further observed that the challenged comments "merely clarified the witness's belief that there was nothing obviously illegal about images obtained from [Petitioner's] computer, and whether any of the women in the photos might be underage would just be speculation on his part." Id. at n.3.

In a due process challenge to the admission of evidence, Petitioner is not entitled to relief unless he can demonstrate that the evidence introduced is "so unduly prejudicial that it renders the trial fundamentally unfair." Welch v. Sirmons, 451 F.3d 675, 692 (10th Cir. 2006) (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). Petitioner has failed to demonstrate how the comments made by Officer Huff in response to defense counsel's questions rendered his trial fundamentally unfair. Further, the trial court's admonishment to the jury to disregard Officer Huff's comments was sufficient to cure any error. See Welch, 451 F.3d at 691. Accordingly, Petitioner's request for relief on his claim of an evidentiary harpoon shall be denied.

### *7.     Prosecutorial misconduct (ground 7)*

As his seventh proposition of error, Petitioner complains that the prosecutor engaged in misconduct when (1) he suggested that Petitioner gave his mother a black eye when the prosecutor knew otherwise; (2) he improperly questioned witness Loretta McCloud about whether she asked how Sandra Ramsey got a bruise; (3) he violated the discovery order of the court; and (4) he misstated the evidence in closing argument. The OCCA reviewed these same allegations of prosecutorial misconduct as asserted on direct appeal, finding as follows:

> In proposition 7, we find no misconduct on the part of the prosecutor which would warrant a new trial or other relief.
>
> Specifically, we find (1) either party is free to call a witness whose version of the facts is different from another witness's; (2) any error in the admission of hearsay concerning how the victim received a particular bruise is harmless, as Appellant admitted to police that he had inflicted such an injury on the victim himself; (3) Appellant has failed to identify any material prejudice resulting from the prosecutor's violation of the discovery order, or from any statements made in closing argument.

Dkt. # 6, Ex. D at 4. Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

After reviewing the entire trial transcript, this Court finds that the OCCA's rejection of this

claim was not an unreasonable application of constitutional law. The Court finds after careful review of the trial transcript, that the alleged misconduct by the prosecutor did not plausibly tip the scales in favor of the prosecution. The Court is not convinced of a reasonable probability that the outcome of the trial would have been different without the alleged incidents of misconduct. In light of the evidence presented in this case, the Court finds no reasonable probability that the verdict would have been different without the incidents of alleged misconduct by the prosecutor and concludes that the proceedings against Petitioner were not rendered fundamentally unfair by prosecutorial misconduct. Pursuant to § 2254(d), habeas corpus relief on this claim shall be denied.

### 8.     *Cumulative error (ground 8)*

Finally, Petitioner argues that the accumulation of all trial errors deprived him of his rights to due process and fundamental fairness, entitling him to relief. The Tenth Circuit Court of Appeals has specifically held that cumulative error analysis is applicable "only where there are two or more actual errors." Fero v. Kerby , 39 F. 3d 1462, 1475 (10th Cir. 1994) (citing United States v. Rivera, 900 F. 2d 1462, 1571 (10th Cir. 1990)). Cumulative impact of non-errors is not part of the analysis. Id.  Having rejected each of Petitioner's claims, the Court finds Petitioner has shown no cumulative error warranting a new trial.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. A separate Judgment shall be entered in this case.

DATED this 28th day of July, 2008.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE